IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL J. CADIGAN, for himself
and all others similarly situated,

      Plaintiff,

vs.                                               No. CIV 99-1406 LFG/KBM

TRANSAMERICA OCCIDENTAL LIFE
INSURANCE COMPANY,

      Defendant.

## MEMORANDUM AND ORDER OF REMAND

THIS MATTER comes before the Court on Plaintiff's Motion to Remand [Doc. 13]. Having considered the briefs of counsel and being otherwise fully advised in the premises, the Court finds that the motion is well-taken and will be granted.

### Background

This case was filed in the First Judicial District Court, State of New Mexico, by Plaintiff Michael J. Cadigan ("Cadigan") on behalf of himself and all putative class members. Defendant filed its Notice of Removal and Answer in federal court on December 3, 1999. Plaintiff now seeks a remand to state court, arguing that the $75,000 amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. §1332 has not been met, and this Court therefore has no jurisdiction.

Cadigan alleges in his complaint that Defendant Transamerica Occidental Life Insurance Company ("Transamerica") misled its policyholders, including Cadigan, by failing to disclose the

annual percentage rate and/or annual rate of interest of the additional premium charged to policyholders who elected to pay premiums in installments over the course of the policy year, rather than in one annual payment. Cadigan seeks actual and punitive damages as well as injunctive and declaratory relief, and seeks certification of a class of similarly-situated policyholders. Defendant filed a counterclaim along with its answer, seeking damages for losses it will incur if Cadigan and the class prevail under this complaint.

Cadigan did not seek damages in any specified amount for either himself or the proposed class. Indeed, under New Mexico's state pleading rules, it is impermissible for the complaint to contain an allegation for damages in any specific monetary amount. S.C.R.A. 2000, Rules of Civil Procedure, 1-010(B). Where the allegations of the complaint do not clearly set forth an amount in controversy exceeding $75,000, the removing party has the burden of setting out in its notice of removal specific underlying facts establishing the jurisdictional amount. Laughlin v. Kmart Corp., 50 F. 3d 871, 873 (10th Cir. 1995). There is a presumption against removal jurisdiction, Id., and the case must be remanded "if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992), cited in Laughlin.

Transamerica asserts that the jurisdictional minimum has been satisfied, on three grounds: (1) its cost to comply with the injunctive relief sought is greater than $75,000; (2) the punitive damages claim exceeds $75,000; and (3) damages under the counterclaim would amount to more than $75,000. The Court finds none of these grounds sufficient to confer federal jurisdiction.

### Cost to Comply With the Requested Injunctive Relief

Transamerica asserts that, if Cadigan's request for injunctive relief is granted and the Court orders Defendant to provide written disclosure of rates of interest and finance charges, it will cost

the company significantly more than $75,000 to comply, because it will be forced to take the following actions: perform advanced interest calculations; prepare new policy forms and illustrative materials and file these with the insurance departments of each of the 53 states and other jurisdictions in which it does business; prepare, print, and mail the disclosures to its nearly one million existing policyholders; train sales personnel in the new disclosures; and prepare and distribute new policy forms and reference materials throughout the company. Transamerica submitted an affidavit giving details of these costs, asserting that it will incur these expenses whether or not this case is certified as a class action. The company also argues that it will lose over $12 million in unpaid premiums in the first year that injunctive relief is granted.

In a class action suit involving "separate and distinct" claims, each plaintiff in the class must be shown to satisfy the jurisdictional amount before the federal court can assume diversity jurisdiction. Zahn v. Int'l Paper Co., 414 U.S. 291, 94 S. Ct. 505 (1973). The claims of the individual class members may not be aggregated to satisfy the jurisdictional amount where there is no joint or common interest or title in the subject matter of the suit. Snyder v. Harris, 394 U.S. 332, 89 S. Ct. 1053 (1969). Even if the complaint is based on a single instrument, claimants may not aggregate their claims unless they are seeking to "enforce a single title or right in which they have an undivided interest." Aetna Ins. Co. v. Chicago, Rock Island & Pac. RR Co., 229 F.2d 584, 586 (10th Cir. 1956).

The Tenth Circuit made clear that the "amount in controversy" requirement can be satisfied by looking to the cost the defendant will incur in complying with injunctive relief. Ronzio v. Denver & R.G.W.R. Co., 116 F.2d 604 (10th Cir. 1940); Okla. Retail Grocers Ass'n v. Wal-Mart Stores, Inc., 605 F.2d 1155, 1159-60 (10th Cir. 1979). However, "when a number of plaintiffs are making

3

separate claims against a single defendant . . . the court must look only to the claims of each plaintiff rather than the total detriment to the defendant." Wienberg v. General Motors Corp., No. CIV 98-771 BB/LFG, slip op. at 3 (D.N.M. Oct. 19. 1998) (Black, J.), *citing* Lonnquist v. J.C. Penney Co., 421 F.2d 597 (10th Cir. 1970).  In these circumstances, the Court can consider the total cost to the defendant only if the plaintiffs assert a common and undivided interest.  Id., at 598; Harris v. Nationwide Ins. Co., 78 F. Supp. 2d 1215, 1999 WL 1249709, at *2 (D. Utah 1999); *see also*, Justice v. Atchison, Topeka & Santa Fe Ry. Co., 927 F.2d 503 (10th Cir. 1991) (the plaintiffs' claims were "common and undivided" where the nature of the injunctive relief sought was elimination of a public nuisance by rebuilding certain structures; the benefit of such injunctive relief could not be subdivided or prorated among the plaintiffs).

In this case, factors relevant to determining whether the claims are "common and undivided" all point to the same conclusion and compel the Court to reject "total detriment to the defendant" as a measure of the amount in controversy.  Each plaintiff in the putative class has a "separate and distinct" insurance policy with Transamerica.  Each class member holds his or her rights individually rather than in group status, even though the claims present common questions of law and fact as is required for class certification.  Prior to the filing of this lawsuit, the plaintiffs did not possess any rights in common.  Each plaintiff seeks damages which are unique to the individual and depend on the type of policy issued and the payment schedule.  Each plaintiff could have sued individually to secure the right to disclosure of hidden charges for installment payments, without affecting the rights of the other plaintiffs.  There is no common fund in which the plaintiffs as a group have an undivided interest.  *See*, Amundson & Assocs. Art Studio, Ltd. v. Nat'l Council on Compensation Ins., Inc., 977 F. Supp. 1116 (D. Kan. 1997); Copeland v. MBNA America, N.A., 820 F. Supp. 537, 541 (D.

4

Colo. 1993); and Girrens, Inc. v. Simon DeBartolo Group, Inc., 976 F. Supp. 1399, 1402 (D. Kan. 1997):

> Although the contract terms in issue may be identical, and the circumstances of the alleged breach the same, the plaintiffs are not parties to the same contract. Plaintiffs have not united to vindicate a 'common, joint, integrated, or undivided' right. Rather, each class member seeks to enforce its own separate contract and have united merely for convenience and economy. Since aggregation of plaintiffs' claims for injunction would not be proper, diversity jurisdiction may not, therefore, be based on the cost of complying with plaintiffs' requested injunction.

The same is true in the present case. Where, as here, plaintiffs' claims are separate and distinct, it is improper to look to a defendant's total cost of complying with injunctive relief. Lonnquist. Even if we accept Transamerica's factual assertions regarding what it will cost the company to print new policies, obtain state approval, train new employees, and so forth, Cadigan seeks injunctive relief only to the extent that he is asking for disclosure of hidden finance charges or interest rates for payments of different premium options. It is simply not true, as Transamerica asserts, that even "had Cadigan sued alone, Transamerica's cost of complying with the requested injunctive relief would exceed $75,000." The fact that there may be many thousands of potential class members is not relevant, as their claims cannot be stitched together to satisfy the "cost of compliance" standard. Under the facts of this case, cost of compliance not provide a basis for diversity jurisdiction.

### **Aggregating Punitive Damage Claims**

Defendant next urges the Court to aggregate the punitive damage claims of the class members to reach the $75,000 requirement. Defendant argues that, since New Mexico views punitive damages

as punishment and deterrence, meant not to compensate the plaintiffs but to provide a public benefit or collective good, such damages are therefore to be considered a collective right in which plaintiff class members hold a common and undivided interest.

Defendant's position is based on law from the Fifth and Eleventh Circuits. *See*, Allen v. R & H Oil & Gas Co., 63 F.3d 1326 (5th Cir. 1995); and Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996). There is a split in authority among the circuits on this issue, with the Fifth Circuit itself not solidly in the pro-aggregation camp; *see*, Ard v. Transcon. Gas Pipe Line Corp., 138 F.3d 596, 601 (5th Cir. 1998) (limiting the holding in Allen as based on "the peculiar nature of punitive damages under Mississippi law").

Although the Tenth Circuit has not addressed this question, several district court decisions within the Tenth Circuit reject the Allen / Tapscott approach, relying instead on a line of authority based on the leading case of Gilman v. BHC Securities, Inc., 104 F.3d 1418, 1430 (2d Cir. 1997). *See*, *e.g.*, Wienberg v General Motors Corp., *supra* (Black, J.), and cases from other districts cited therein; Evans v. E & D Partnership, No. CIV 98-1512 LH/RLP, slip op. (D.N.M. March 31, 1999) (Hansen, J.); Wilson v. Mass. Mut Life Ins. Co., No. CIV 98-1580 JP/DJS, slip op. (D.N.M. May 27, 1999) (Parker, J.); and Kollecas v. State Farm Life Ins. Co., No. CIV 99-1428 WWD/LFG, slip op. (D.N.M. Feb. 14, 2000) (Deaton, J.).

The Second Circuit in Gilman held:

> We decline to join the courts holding that punitive damages claims are by nature 'common and undivided' and therefore aggregable for jurisdictional purposes. We think that the rule in Snyder, Zahn, and other cases bars the aggregation of punitive damages claims absent a prior determination that the underlying claim – the basis on which such damages are sought – asserts a single title or right . . . It cannot be denied that Gilman and his putative class members could sue

6

> separately for punitive damages, and, whether they . . . were awarded punitive damages or not, the rights of subsequent plaintiffs would remain unaffected . . . Punitive damages claims thus cannot be deemed the type of single, indivisible res in which – under the classic 'common fund' analysis – multiple plaintiffs share a common and undivided interest that justifies aggregation. [Most internal punctuation omitted].

Relying on Gilman, Judge Black held in Wienberg, *supra*, at 5, that "[s]ince the purpose of the jurisdictional amount standard is to keep petty controversies out of federal court and keep diversity jurisdiction under some modicum of control, it seems to make little sense to permit Plaintiff to enter federal court on a magic carpet of aggregated potential punitive damages." He notes also that the district courts of the Tenth Circuit have "repeatedly refused to permit class action plaintiffs to overcome the jurisdictional hurdle by aggregating punitive damages."[1] This Court finds the Wienberg reasoning persuasive and will follow the lead of other courts in this circuit. The claims for punitive damages in this case will not be aggregated to achieve the jurisdictional amount.

In addition, the Court cannot say that plaintiff's individual request for an unspecified amount of punitive damages would be sufficient to meet the jurisdiction minimum. A punitive damage claim is not favored when it is the primary basis of jurisdiction. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993). The Court will not speculate as to the amount of possible punitive damages, if any, that a jury would award Plaintiff in this case. As was pointed out in Chief Magistrate Judge Deaton's recent opinion, "even with a putative class of 1,000 members, a punitive damages award would have to exceed $75,000,000.00 in order to meet the required jurisdictional amount for each plaintiff. Speculation is not a sufficient basis upon which to allow removal to federal court."

---

[1] *Citing* Girrens, Amundson, Copeland, and Asten v. Southwestern Bell Tel. Co., 914 F. Supp. 430 (D. Kan. 1996).

**Damages Under Defendant's Counterclaim**

Finally, Transamerica argues that the amount-in-controversy requirement is satisfied in this case when measured by the value of Defendant's compulsory counterclaim. The counterclaim seeks damages well over $75,000 as compensation for the expenses it will incur if forced to meet Plaintiff's demands, as well as for loss of investment income. Plaintiff asserts that the counterclaim is not a counterclaim at all but rather an offset, which actually has the effect of reducing the amount in controversy in this case.

Transamerica cites Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc., 98 F.3d 1241 (10th Cir. 1996) to support its position that the amount sought in a compulsory counterclaim must be considered in determining the amount in controversy. The court did not actually hold that, finding rather that the damages alleged in the complaint were sufficient to invoke diversity jurisdiction and adding in *dicta*, in a footnote, that the defendant's compulsory counterclaim would have provided a sufficient independent basis for federal jurisdiction. Macpherson, at 1245, n.2.

Aside from the fact that the counterclaim comment was *dicta*, Macpherson is not applicable here, because it was not a removal case. The Tenth Circuit therefore applied the appropriate standard for determining jurisdiction in cases originally filed in federal court: whether the court can say "to a legal certainty that the claim is really for less than the jurisdictional amount." Macpherson, at 1245, *citing* St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S. Ct. 586 (1938). The standard for determining amount-in-controversy is much stricter in removal cases, where "[t]here is a strong presumption that the plaintiff has not claimed a large amount to confer jurisdiction on a federal court or that the parties have colluded to that end." Gaus, at 566. Removal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." Id.

"[T]he great weight of authority favors Plaintiff's position that the amount of a counterclaim may not be considered in determining the amount in controversy." Mesa Indus., Inc. v. Eaglebrook Prods., Inc., 980 F. Supp. 323, 326 (D. Ariz. 1997), and cases cited therein.[2] This holding is consistent with the well-pleaded complaint rule, under which the existence of federal question jurisdiction is determined solely by the allegations contained in plaintiff's complaint; defenses and counterclaims that implicate federal law are normally insufficient to confer federal jurisdiction. Indep. Mach. Co., 991 F. Supp. at 692, *citing* Caterpillar Inc. v. Williams, 482 U.S. 386, 107 S. Ct. 2425 (1987). In addition, this rule is consistent with the policy of construing removal statutes narrowly. Id., *citing* Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S. Ct. 868 (1941).

Having found no other amount-in-controversy basis for diversity jurisdiction, the Court declines to rely on Transamerica's counterclaim to supply the requisite amount.

**Conclusion**

Defendant has failed to meet its burden of setting out specific underlying facts in its notice of removal to establish the jurisdictional amount. Neither the cost of complying with the requested injunction, nor the amount of punitive damages, nor the counterclaim, can supply the needed jurisdictional basis.

---

[2] *See also*, Martin Pet Prods.(U.S.), Inc. v. Lawrence, 814 F. Supp. 56, 58 (D. Kan.1993); Indep. Mach. Co. v. Int'l Tray Pads & Packaging, Inc., 991 F. Supp. 687 (D.N.J. 1998); Cent. Associated Carriers, Inc. v. Nickelberry, 995 F. Supp. 1031, 1035 (W.D. Mo. 1998); Conference Am., Inc. v. Q.E.D. Int'l, Inc., 50 F. Supp. 2d 1239, 1242 (M.D. Ala. 1999); Al-Cast Mold & Pattern, Inc. v. Perception, Inc., 52 F. Supp. 2d 1081, 1082-83 (D. Minn. 1999).

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [Doc. 13] is granted, and this case is hereby remanded to state court.

	_____
	Lorenzo F. Garcia
	United States Magistrate Judge